Evan VANZO, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0006–CR–230.

Court of Appeals of Indiana.

Nov. 21, 2000.

**1062**

Andrew C. Krull, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Evan Vanzo ("Vanzo") filed an interlocutory appeal from the trial court's denial of his motion to suppress. We reverse.[1]

### Issue

Vanzo presents one issue for our review, which we restate as whether the search of Vanzo's apartment constituted a valid victim-or-suspect search.[2]

---

1. We heard oral argument in this cause on October 17, 2000, in Indianapolis.

2. The State denominates the search conducted by Officer Lewis a "protective sweep". The search is not justified as a valid "protective sweep". As we noted in *Reed v. State,*

## Facts and Procedural History

On the evening of October 4, 1999, Indianapolis Police Officer Thomas Stout ("Stout") responded to a report of a shooting at Vanzo's apartment. Stout arrived at the apartment building within moments and met Vanzo, who admitted Stout into the building. Once inside the apartment, Stout saw a gunshot victim lying on the floor in a hallway closet adjacent to the living room. Upon entering the home, Stout performed a search, looking in each of the rooms for other injured persons or a suspect. Stout did not look in closets or under beds. After looking in each of the rooms and concluding that no one else was in the apartment, Stout returned to the victim and waited for backup officers to arrive. Approximately two minutes after Stout's arrival on the scene, Officer Donald Brown ("Brown") arrived, and several other officers followed. The officers questioned individuals at the scene and tended to the victim in the apartment. Like Stout, none of these officers searched the bedroom closets or under the beds.

Officer Connie Lewis ("Lewis") arrived shortly thereafter and also began gathering information from people at the scene. Approximately thirty minutes after her arrival and after the victim had been removed from the scene, Lewis searched the apartment. While in Vanzo's living room, Lewis found drug paraphernalia and a "baggie of marijuana" in plain view.[3] Upon further search of the apartment, Lewis found additional marijuana and drug paraphernalia in a bedroom closet. She testified at the hearing that she noticed the closet door was ajar and upon opening the door fully, she found the marijuana and paraphernalia in plain view. She subsequently found marijuana on a bedside table in the room. Lewis completed her search of the apartment and collected the marijuana and paraphernalia.

The State charged Vanzo with dealing in marijuana[4] and possession of marijuana,[5] both Class D felonies. On January 12, 2000, Vanzo filed a motion to suppress in which he contended that the marijuana and paraphernalia were obtained in violation of his state and federal constitutional rights. On February 9, 2000, the court held a hearing on Vanzo's motion and thereafter denied the motion. On March 1, 2000, the trial court certified its order for interlocutory appeal. On April 17, 2000, we accepted jurisdiction of this appeal pursuant to Indiana Appellate Rule 4(B)(6).

## Discussion and Decision

 Vanzo claims that the evidence obtained during the search of his bedroom is inadmissible because the search was un-

---

582 N.E.2d 826, 827 (Ind.Ct.App.1991), *trans. denied, cert. denied*, 506 U.S. 848, 113 S.Ct. 142, 121 L.Ed.2d 94, "[t]he United States Supreme Court has held that *incident to an arrest*, the police can, as a precautionary measure and without probable cause or reasonable suspicion, look in other spaces immediately adjoining *the place of arrest* from which an attack could be immediately launched." (citing *Maryland v. Buie*, 494 U.S. 325, 344, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990)) (emphasis supplied). At the time Officer Lewis conducted her search of the premises, no one had been arrested nor was an arrest contemplated as to Vanzo or anyone else at the scene. Because the established precedent makes it clear that a "protective sweep" must be incident to a suspect's arrest, we decline to extend this exception to the warrant requirement beyond its current limitations.

3. During oral argument, defense counsel conceded that the marijuana found in the living room was not at issue and therefore was not before us on appeal. In his rebuttal, defense counsel further suggested that the marijuana found in the living room would be admissible as it was in plain view in an area connected to the crime scene. We note that the charging information does not distinguish between the two quantities of marijuana. Vanzo was charged with possession of and dealing in "marijuana, in an amount greater than thirty (30) grams."

4. *See* IND.CODE § 35-48-4-10.

5. *See* IND.CODE § 35-48-4-11.

constitutional.[6] *See* U.S. CONST. amend. IV; IND. CONST. art. 1, § 11. In particular, Vanzo contends that the State failed to satisfy its burden under the plain view doctrine that the officer had a legal right to be in the room searched.[7]

The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent a showing that the trial court abused its discretion. *Johnson v. State*, 710 N.E.2d 925, 927 (Ind.Ct.App.1999). Upon review of a trial court's ruling on a motion to suppress evidence, we will examine the evidence most favorable to the ruling, together with any uncontradicted evidence. *Callahan v. State*, 719 N.E.2d 430, 434 (Ind.Ct.App.1999). We will neither reweigh the evidence nor judge witness credibility. *Johnson*, 710 N.E.2d at 927.

Our federal and state constitutions prohibit warrantless entry into a person's home for the purpose of arrest or search. U.S. CONST. amend. IV; IND. CONST. art. 1, § 11. There are, however, certain narrowly drawn exceptions to the warrant requirement, including the plain view doctrine. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Under the plain view doctrine, three conditions must be satisfied to justify the warrantless seizure of evidence: (1) police have a legal right to be at the place from which the evidence can be plainly viewed; (2) the incriminating character of the evidence is immediately apparent; and (3) police have a lawful right of access to the object itself. *Houser v. State*, 678 N.E.2d 95, 101 (Ind.1997) (citing *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).

Vanzo's challenge on appeal is limited to the first prong: whether Lewis had a legal right to search the room in which she discovered the marijuana. Police officers may enter a home without a warrant to aid a person in need of assistance. *See Stewart v. State*, 688 N.E.2d 1254, 1257 (Ind.1997). Further, "when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises." *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). "The need to preserve or protect life justifies what would otherwise be illegal if exigency or emergency did not exist." *Green v. State*, 575 N.E.2d 296, 299 (Ind.Ct.App. 1991), *trans. denied.* Officers have an in-

6. Although Vanzo makes a general argument that the search and seizure provision of the Indiana Constitution has been violated, he presents no explanation of how the state provision should be analyzed apart from the federal provision. *See Smith v. State*, 689 N.E.2d 1238, 1248 (Ind.1997) ("Absent a clear invocation of a violation of rights under the Indiana Constitution and a cogent supporting argument, we will assume that defendant raises only a claim under the United States Constitution and will analyze that claim as we would a federal constitutional claim."); *see also Rynerson v. City of Franklin*, 669 N.E.2d 964, 966 n. 1 (Ind.1996) (noting that where defendant fails to provide argument or authority that analysis under Due Course of Law Provision is different than analysis used under Due Process Clause, issue will be analyzed under Due Process Clause). "The failure to present legal analysis to support a claimed violation of the Indiana Constitution constitutes waiver of such an argument." *Spranger v. State*, 650 N.E.2d 1117, 1126 (Ind.1995).

Notwithstanding waiver, we need not address the state constitutional claim, as we have found the search and seizure improper under the federal constitution.

7. Vanzo also asserts that there is no "homicide scene" exception that would validate the search without a warrant. We agree. As the U.S. Supreme Court held in *Mincey v. Arizona*, law enforcement officers are not permitted to search for evidence once the crime scene is secure merely because a homicide has occurred. 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). Rather, the officers "may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises." *Id. See also Flippo v. West Virginia*, 528 U.S. 11, 120 S.Ct. 7, 145 L.Ed.2d 16 (1999). Here, however, the trial court relied on the plain view doctrine in denying the motion to suppress, and therefore, we limit our review to that basis.

terest in assuring themselves that the home is "not harboring other persons who are dangerous and who could unexpectedly launch an attack." *Maryland v. Buie,* 494 U.S. 325, 333, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Hence, law enforcement officers may make a cursory inspection of those spaces where a person may be found to secure the crime scene and ensure their safety. *Id.* Furthermore, police officers may seize any evidence that is found in plain view during their victim-or-suspect search. *Id.*

 Here, the police officers responded to a call that an individual had been shot at Vanzo's apartment. Thus, the officers were permitted to enter the home without a warrant to aid the victim. Upon entering the home, Stout performed a search, looking in each of the rooms for other injured persons or a suspect. Stout did not look in closets or under beds. Approximately thirty minutes later, Lewis also searched each of the rooms. It is this second search that Vanzo contends was unconstitutional. Vanzo contends that Stout had already performed the search necessary to secure the scene and ensure the safety of the officers and that therefore, any further search by Lewis required a warrant. The State contends that Lewis performed a proper search, during which she found evidence in plain view, and therefore, the evidence is admissible pursuant to the plain view doctrine. Thus, the question before us is whether Stout had secured the scene prior to Lewis' search. We conclude that he did.

Upon entering the apartment, Stout's objective was to secure the crime scene. After checking that the victim was being cared for, he looked in each of the rooms to ensure that no one was in the apartment. Stout testified that in one of the bedrooms, he saw a closet that appeared to be empty. He indicated that he did not look in closets or under beds, but that he was satisfied that no one was in the apartment. After his search, Stout returned to the victim and waited for backup to arrive.

Approximately two minutes after Stout's arrival, Brown and Sergeant Tucheck arrived, and several other officers arrived shortly thereafter. Although Stout testified on redirect examination that he was not completely certain that no one was in the apartment because he had not looked in closets and other places where someone could be hiding, the record indicates that Stout did not search those areas as other officers arrived on the scene. Neither did Stout inform those other officers that a search was necessary. Indeed, Stout testified that he did not see anyone perform a search of the apartment. Rather, Stout and the other officers remained in the apartment, where they assisted the victim and questioned people on the scene. It was not until Lewis's search thirty minutes later that the closets were explored.

Lewis testified that her search was aimed at ensuring the safety of the officers on the scene. She also indicated, however, that she was "[j]ust looking to see what [she] could find, basically. Any more narcotics, a gun, any people. Just everything." The record reveals that prior to Lewis's search, several officers were in the apartment. As noted above, none of them searched the closets or other possible hiding places. Lewis did not talk to the officers on the scene about whether anyone was still in the apartment prior to her search. Further, Stout stood guard so that no one could enter the crime scene. The record also reveals that at the time of Lewis's search, the victim had already been removed from the scene. Record at 57. Thus, the crime scene was secure, and it cannot be contended that Lewis's search was justified by any emergency threatening the safety of those in the apartment. *See Mincey,* 437 U.S. at 393, 98 S.Ct. 2408 (noting that "a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation'") (quoting *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *see also Thompson v. Louisiana,* 469 U.S. 17, 22, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984) (hold-

ing that although seizure of evidence found in plain view during the limited "victim-or-suspect" search would have been appropriate, the "victim-or-suspect" search had been completed at the time investigators arrived, and therefore evidence obtained during warrantless search was inadmissible).

 Both the State and Vanzo focused their arguments on whether the search was prompt. While the timing of a search is a significant factor in determining whether a crime scene is secure, we note that it is not dispositive in and of itself. *See Thompson*, 469 U.S. at 21, 105 S.Ct. 409 (stating that while the four-day search in *Mincey* was a greater intrusion than the two-hour search at bar, "nothing in *Mincey* turned on the length of time taken in the search or the date on which it was conducted. A 2–hour general search remains a significant intrusion on petitioner's privacy and therefore may only be conducted subject to the constraints—including the warrant requirement—of the Fourth Amendment"). Indeed, there is no magical moment when promptness passes. Rather, we consider such factors as the number of officers on the scene and their actions before a victim-or-suspect search is performed; the nature of the search, such as whether it is investigative; and the timing of the search.

In the present case, prior to Lewis's search and after Stout's initial search, several officers had arrived on the scene and entered the apartment without performing any further search for possible suspects or additional victims. Their continued presence in the apartment belies the contention that they were concerned that a possible suspect remained in the apartment. Further, Lewis's testimony that she was searching for anything she could find indicates that the search was not limited to victims and suspects, but extended to investigation. Consequently, the motion to suppress should have been granted.

Therefore, we reverse the trial court's denial of Vanzo's motion to suppress.

Reversed.

SULLIVAN, J., and NAJAM, J. concur.