**Scott S. HOLDER, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.
No. 87A05–0402–CR–94.**

Court of Appeals of Indiana.

Jan. 26, 2005.

Publication Ordered March 23, 2005.

Transfer Granted April 28, 2005.

Frank R. Hahn, Law Office of John Burley Scales, Boonville, IN, Attorney for Appellant.

Steve . Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

Scott S. Holder brings this interlocutory appeal of the trial court's denial of his motion to suppress evidence discovered in a search of his home. He contends that the evidence is inadmissible because it was obtained in violation of Article 1, Section 11 of the Indiana Constitution.[1] We restate the relevant issue as: whether police officers performing an investigation act reasonably when, without first obtaining a warrant, they enter onto an individual's property and position themselves near house windows in order to ascertain the source of an odor.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On January 14, 2003, Boonville Police Officer Jonathan Bruner was patrolling in Holder's neighborhood when he detected a strong odor of ether. He drove around trying to locate the source of the odor and, after about fifteen minutes, determined the area from which the odor was emanating and contacted his supervisor, Lieutenant Mark Hadley. Hadley and Chief Harmon joined Bruner and confirmed his observation of the ether odor. The officers walked through the neighborhood and noticed a pickup truck with its hood up at the back of Holder's property. They approached the vehicle, walking past Holder's house and into his backyard because Bruner thought the smell might have been emanating from the vehicle. The officers did not see any cans of starting fluid (ether) nearby, so they went to a neighbor's house and knocked, but no one answered. The officers returned to Holder's house, and as they passed along the south side of the house, Bruner noticed a cracked basement window. When he knelt down at the window, he smelled the ether very prominently. Harmon knocked at the front door, but no one answered. Bruner and Harmon then knocked at the back door, and again no one answered. Holder then appeared in the window of the back door, quickly looked out from behind the curtain, and disappeared. About ten seconds later, he opened the door, stepped outside, and shut the door behind him. The officers detected the smell of ether from within the home when Holder opened and shut the door.

When confronted by the officers about the ether odor, Holder denied smelling it.

1. Holder also argues that the search violated the Fourth Amendment to the United States Constitution, but we need not address this issue based on our resolution of his Section 11 claim.

Officers then elicited from Holder that he had charges pending for manufacturing methamphetamine. The officers asked Holder for consent to search the home, but Holder refused to consent and told the officers that they should get a warrant. Hadley then contacted a Boonville detective to process a warrant.

Holder attempted to reenter his home, stating that he would wait inside until officers obtained the warrant. Bruner then told Holder it would be best if he waited outside. Holder replied that he could not wait outside because his three-year-old granddaughter was inside, and he needed to care for her. Bruner asked if anyone else was in the home, and Holder told him that two adults were inside. Bruner and Harmon determined that they needed to go inside the home and entered it while Holder and Hadley stayed outside. Harmon went to the kitchen area, and Bruner went to the basement door which was draped with a blanket. Bruner pulled the blanket back and identified himself. Although no one answered, Bruner saw someone's feet at the bottom edge of the door. He ordered the person to come out, and Michael Elpers exited and joined Harmon in the kitchen. Bruner entered the basement to conduct a safety sweep and discovered items used in the manufacture of methamphetamine, including several containers of starting fluid, blenders containing a liquid, a mirror, and a powder substance. Bruner informed Harmon of the items in the basement, and Harmon instructed Hadley to place Holder in handcuffs. During a search of Holder's person, officers discovered a bottle containing a substance wrapped in a baggie. The officers then learned that the home was outside the city limits and contacted the Warrick County Sheriff's Department to complete the investigation. Deputy Jason Vandivier and another officer arrived on the scene and assumed control of the investigation. After Boonville officers conveyed what had transpired, Vandivier went to the basement and photographed it. Vandivier then left, obtained a warrant, and conducted a complete search of the home.

Holder filed a motion to suppress the evidence found in the search, arguing that the search was unconstitutional. After a hearing, the trial court denied the motion to suppress. The trial court certified its decision on the motion to suppress for interlocutory appeal, and Holder perfected this appeal.

## DISCUSSION AND DECISION

Holder brings this interlocutory appeal of the trial court's denial of his motion to suppress evidence discovered in the search of his home. He contends that the evidence is inadmissible because it was discovered in violation of Article 1, Section 11 of the Indiana Constitution.

We review the trial court's ruling on a motion to suppress in a manner similar to other sufficiency questions. *Jackson v. State*, 785 N.E.2d 615, 618 (Ind.Ct.App. 2003), *trans. denied; Divello v. State*, 782 N.E.2d 433, 436 (Ind.Ct.App.2003), *trans. denied; Crabtree v. State*, 762 N.E.2d 241, 244 (Ind.Ct.App.2002). We affirm if substantial evidence of probative value supports the trial court's decision. *Jackson*, 785 N.E.2d at 618; *Divello*, 782 N.E.2d at 436. We neither reweigh the evidence nor judge the credibility of witnesses. *Burkett v. State*, 785 N.E.2d 276, 278 (Ind.Ct.App. 2003); *Divello*, 782 N.E.2d at 436. Rather, we consider the evidence most favorable to the ruling together with any adverse evidence that is uncontradicted. *Burkett*, 785 N.E.2d at 278; *Divello*, 782 N.E.2d at 436.

The purpose of Article 1, Section 11 of the Indiana Constitution is to protect

from unreasonable police activity those areas of life that Hoosiers regard as private. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001); *State v. Moore*, 796 N.E.2d 764, 767 (Ind.Ct.App.2003), *trans. denied* (2004). Analysis under Article 1, Section 11 of the Indiana Constitution requires examination of the specific facts of each case and whether police conduct is reasonable in light of the totality of the circumstances. *Scott v. State*, 803 N.E.2d 1231, 1236 (Ind. Ct.App.2004); *VanWinkle v. State*, 764 N.E.2d 258, 266 (Ind.Ct.App.2002), *trans. denied*. Each case must be considered upon its own facts to decide if the police behavior was reasonable. *Mitchell*, 745 N.E.2d at 786; *Moore*, 796 N.E.2d at 767. In order to guarantee the people against unreasonable searches and seizures, the provision must receive a liberal construction in its application. *Mitchell*, 745 N.E.2d at 786; *Moore*, 796 N.E.2d at 767. The State bears the burden of proving that the search, that is, the intrusion, was reasonable under the totality of the circumstances. *Mitchell*, 745 N.E.2d at 786; *Moore*, 796 N.E.2d at 767.

Here, Bruner testified at the hearing on the motion to suppress that he walked up a driveway past Holder's residence to the backyard area to investigate whether there were ether cans near the pick up truck parked behind Holder's house. After getting no response at the neighbor's home, he noticed that a basement window in Holder's home was cracked. He testified that he knelt down and smelled at the window. However, he did not testify as to how he positioned himself to accomplish this, other than that he was on Holder's property at the time. Thus, the State did not establish whether Bruner stayed on a pathway or traversed Holder's lawn or landscaping to access the window. Moreover, the record does not establish how far the window was from the areas of Holder's yard that the public could be expected to

use, nor does it show how close to the window Bruner came when he smelled at it. In short, it is simply unclear from the record before us that Bruner's actions were reasonable, i.e., that he stayed in the areas which Holder could reasonably expect visitors and members of the public to use. Because the State failed to meet its burden to prove that Bruner's actions were reasonable when he positioned himself to smell the odor emanating from the basement window, it failed to demonstrate that the officer's actions comported with Section 11. Accordingly, the evidence obtained from the search should have been suppressed.

Reversed.

ROBB, J., concurs with separate opinion.

BAKER, J., dissents with separate opinion.

ROBB, Judge, concurs with separate opinion.

I respectfully concur with Chief Judge Kirsch, but write separately. The issue here concerns whether the evidence recovered from the search of Holder's residence is inadmissible because it was obtained in violation of Article I, Section 11 of the Indiana Constitution. Article I, Section 11 guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure...." We liberally construe Article I, Section 11 in order to protect Hoosiers from unreasonable police activity in private areas of their lives. *State v. Stamper*, 788 N.E.2d 862, 865 (Ind.Ct.App. 2003), *trans. denied*. When we evaluate Section 11 claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. *Id.* We have also stated that the protections provided by the Indiana Con-

stitution, including Article I, Section 11, may be more extensive than those provided by its federal constitutional counterparts. *Taylor v. State,* 639 N.E.2d 1052, 1053 (Ind.Ct.App.1994).

Although decided on Fourth Amendment grounds, I believe that *Divello v. State,* 782 N.E.2d 433 (Ind.Ct.App.2003), *trans. denied,* is instructive here. In *Divello,* police went to the defendant's house without a search warrant to investigate an anonymous tip that the defendant was selling marijuana out of his residence. The officers knocked on both the front door and the back door of the defendant's home but received no answer. The officers then proceeded to an adjacent property also owned by the defendant. To gain access to the adjacent property, the officers walked through the backyard of the first residence and then through an open gate in a privacy fence. The officers knocked on the front door of the second residence but again received no answer. The officers then noticed a truck in the back of the second residence that was parked partly in the driveway and partly in the grass. One of the officers walked around the truck to a position where he was between the truck and the house. While in this position, the officer smelled the odor of marijuana coming from the house. The other two officers came to that same position and also smelled marijuana. One of the officers indicated that he had to get eighteen inches away from the house before he could smell the marijuana. Based on the marijuana odor, the officers were able to get a search warrant, and marijuana was found in the defendant's home. The defendant filed a motion to suppress the evidence obtained pursuant to the search warrant, arguing that the officers' entry onto and search of his property violated the Fourth Amendment, but the trial court denied his motion.

We initially stated:

When police enter onto private property in order to conduct an investigation or for another legitimate purpose and restrict their entry to places that other visitors would be expected to go, such as walkways, driveways, or porches, any observation made from these areas is permissible under the United States Constitution and the Fourth Amendment thereto. Accordingly, an individual does not have a reasonable expectation of privacy with regard to things or activities within a residence that may be observed by persons using their natural senses from places impliedly open to a visitor's entry. In general, this means that "if police utilize 'normal means of access to and egress from the house' for some legitimate purpose, such as to make inquiries of the occupant ... it is not a Fourth Amendment search for the police to see or hear or smell from that vantage point what is happening inside the dwelling."

*Id.* at 437 (internal citations omitted). However, we went on to conclude that the officers' observation of the odor of marijuana was constitutionally impermissible. We stated that when the officer "walked around the truck and within four feet of the house, he was clearly no longer in a place where visitors could be expected to go; he had invaded the curtilage of [the defendant's] property. [The defendant] had a reasonable expectation of privacy in this area, and therefore, [the officers'] actions violated the Fourth Amendment." *Id.* at 439 (internal citations omitted). Because the officers' actions violated the Fourth Amendment, we held that all evidence obtained from the search of the residence should have been suppressed. *Id.*

This case is similar to *Divello.* Here, Officer Bruner smelled ether, but could

not determine exactly where in the neighborhood the smell originated. Lieutenant Hadley and Chief Harmon arrived shortly thereafter, and the three began to walk through the neighborhood trying to determine the source of the ether smell. They noticed a truck with its hood up in Holder's backyard. Without a search warrant, they entered Holder's property, walked past his house and into his backyard, and proceeded to examine the area around the truck. Apparently not finding anything, they left Holder's yard and went to a neighbor's house. When no one answered the door at the neighbor's house, they returned to Holder's property. As they walked along the south side of the house, Officer Bruner noticed a crack in a basement window. He knelt down to within inches of the window and smelled ether.

Pursuant to *Divello*, I believe that the officers' actions here violated the Fourth Amendment, but that is not the issue we are asked to decide here. I believe that in this case, Article I, Section 11 affords the same or greater protection than the Fourth Amendment. Therefore, I concur with Chief Judge Kirsch that the officers' actions are unreasonable under Article I, Section 11. When the officers entered Holder's backyard and examined the area around the truck and when Officer Bruner smelled ether at the crack in the basement window, the officers were no longer in areas where visitors would be expected to go, and had invaded the curtilage of the property. Holder had a reasonable expectation of privacy in the area constituting the curtilage of his home, and, therefore, the officers violated Article I, Section 11.

Judge Baker's dissent evinces a strong concern regarding the threat posed by the manufacture, sale, and use of methamphetamine. I share this same concern, but I do not feel that the threat posed by methamphetamine justifies allowing police officers to wander around a neighborhood searching for the source of an ether odor. Nor does it justify police officers entering onto private property without a search warrant and sniffing at the cracks of an individual's basement window. I therefore concur with Chief Judge Kirsch.

BAKER, Judge, dissenting.

I respectfully dissent and must part ways with the majority's decision to reverse the denial of Holder's motion to suppress. In my view, Officer Bruner's initial entry onto the premises was lawful, as was the warrantless entry into the house in light of the exigent circumstances that existed here.

I would note that the touchstone of our analysis under the Fourth Amendment is whether an individual has a "constitutionally protected reasonable expectation of privacy." *Shultz v. State*, 742 N.E.2d 961, 964 (Ind.Ct.App.2001). At least one commentator has observed that "when the police come onto private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment." 1 Wayne R. LaFave, *Search and Seizure* § 2.3(f), at 506–08 (3d ed. 1996). Moreover, what a person knowingly exposes to the public, even in his own home or office, is not subject to Fourth Amendment protection. *Sayre v. State*, 471 N.E.2d 708, 712 (Ind.Ct.App.1984).

A well-known exception to the warrant requirement permits a police officer to enter a home when it is believed that evidence may be destroyed or removed before a warrant is obtained. *State v. Straub*, 749 N.E.2d 593, 600 (Ind.Ct.App. 2001). The officers must have a reasonable belief that there are people within the

premises who are destroying or about to destroy the evidence. *Esquerdo v. State,* 640 N.E.2d 1023, 1027 (Ind.1994). In such a case, the nature of the evidence must be evanescent, and the officers must fear its imminent destruction. *Id.* Yet another exception to the warrant requirement arises when the risk of bodily harm or death is present, or when it is necessary to come to the aid of an individual who is in need. *VanWinkle v. State,* 764 N.E.2d 258, 266 (Ind.Ct.App.2002), *trans. denied.* Put another way, "[t]he need to preserve or protect life justifies what would otherwise be illegal if exigency or emergency did not exist." *Vanzo v. State,* 738 N.E.2d 1061, 1064 (Ind.Ct.App.2000).

In light of the above, it is apparent to me that Officer Bruner's decision to enter the premises and conduct the "smell test" at the basement window was simply incident to the strong odor of ether that was drifting through the vicinity. And Holder had already exposed his illegal activity to the public, as evidenced by the odor of ether in the air and cracked window from which he permitted it to escape. Tr. p. 13. Additionally, the record shows that Officer Bruner already sensed the strong odor outside Holder's residence while armed with the knowledge that ether is a precursor in the manufacture of methamphetamine. Tr. p. 7–9, 38. Put another way, it is without dispute that Officer Bruner detected the odor of ether before he approached Holder's window and before coming in extreme proximity to the residence.

That said, I believe it was reasonable for Officer Bruner to suspect that methamphetamine was being manufactured and to make an initial entry onto Holder's land to investigate. Hence, I must disagree with the majority's determination that Officer Bruner's "smell test" at the basement window was overly intrusive of Holder's privacy rights to the extent that his protections as guaranteed under the Fourth Amendment were violated.

I would also note that sufficient exigent circumstances existed here that justified the officers' entry into the residence without a warrant. During a conversation with the officers at the residence, Holder told them that he had pending criminal charges for the manufacture of methamphetamine. Tr. p. 14. Holder went on to admit that his three-year-old granddaughter was in the house, along with two other adults. Tr. p. 18. To me, all the circumstances here—the strong smell of explosive ether, the adults in the home that could have been destroying evidence, the endangered child, and Holder's pending charges for manufacturing methamphetamine—justified the warrantless entry into Holder's residence. Accordingly, I vote to affirm the trial court's judgment in denying Holder's motion to suppress.

### ORDER

On January 26, 2005, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellant, by counsel, has filed a Motion to Publish Memorandum Decision.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellant's Motion to Publish Memorandum Decision is GRANTED and this Court's opinion heretofore handed down in this cause on January 26, 2005, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.