**STATE of Indiana, Appellant–Plaintiff,**

v.

**Scott Michael CRABB, Appellee–Defendant.**

No. 10A01–0501–CR–45.

Court of Appeals of Indiana.

Oct. 20, 2005.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, for Appellant.

William A. Dawkins, Jeffersonville, for Appellee.

## OPINION

KIRSCH, Chief Judge.

The State appeals a decision of the trial court to suppress evidence seized in a warrantless search, which led to the charging of Scott Michael Crabb with dealing methamphetamine,[1] a Class A felony, possession of methamphetamine,[2] a Class C felony, and neglect of a dependant,[3] a Class D felony. After the trial court granted Crabb's motion to suppress, the State dismissed its charges and filed this appeal. The dispositive issue on review is whether the smell of ether emanating from an apartment reported to house a small child constituted exigent circumstances justifying a warrantless search.

We reverse.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the trial court's ruling are as follows. On February 22, 2004, Paula Smith called the Indiana State Police Post to report an odor at her apartment complex. Smith described the odor as a mixture of roach spray and rubbing alcohol and indicated that the smell was strong. Smith further noted her concern over the fact that a small child lived in the apartment from which the smell emanated. She also reported that the male occupant of the apartment had been bringing things into the apartment from the trunk of his car and that she thought he might be involved in something illegal.

The State Police Post dispatched several officers to investigate the complaint. Upon arriving at the apartment complex, the officers immediately detected an odor of ether, which they knew was associated with the production of methamphetamine. Troopers Robert M. Neal and Barry Brown knocked on the door and rang the doorbell of the apartment from which the odor was emanating but received no answer, even after announcing that they were police officers. Trooper Neal noticed the window-coverings at the front window move as if someone were trying to peek out. There was a closed cooler on the front porch, and Neal opened it and looked inside. Trooper Neal noted that the cooler contained a jar and hoses, which are also consistent with methamphetamine manufacture.

When further knocking on the front door and the rear door garnered no response, the Troopers obtained a key to the apartment from the property manager, but discovered that it would not open the deadbolt on the front door. Trooper Neal took the key to try to open the rear door, however, before he reached the back of the building, he heard Trooper Brown asking people to step outside and to let him see their hands. Trooper Brown had opened the window to the apartment, cut the screen, and entered the apartment through the window. He pointed his shotgun at the female occupant and her young son and told them not to move. Trooper Brown then ordered the occupants out of the apartment, including Crabb. Troopers Neal and Jack Smith searched the apartment and found precursors and materials for the manufacture of methamphetamine. After they searched the apartment, Trooper Neal obtained a search warrant.

Crabb was charged with dealing of methamphetamine as a Class A felony, possession of methamphetamine as a Class C felony, and neglect of a dependant as a

---

1. See IC 35–48–4–1.

2. See IC 35–48–4–6.

3. See IC 35–46–1–4.

Class D felony. Crabb filed a motion to suppress the evidence found at his apartment pursuant to the warrantless entry. The trial court granted the motion, holding that exigent circumstances did not justify the Troopers' opening of the cooler on the porch or entry into the apartment. Consequently, all evidence resulting from the search was suppressed. The State appeals.

## DISCUSSION AND DECISION

■ On appeal from the grant of a motion to suppress, the State appeals from a negative judgment and must show the trial court's ruling on the suppression motion was contrary to law. *State v. Stamper*, 788 N.E.2d 862, 864 (Ind.Ct.App.2003), *trans. denied.* We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* This court neither reweighs the evidence nor judges the credibility of the witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.*

■ The State argues that there were exigent circumstances that justified the warrantless entry of Crabb's apartment. The Fourth Amendment to the Constitution of the United States requires a warrant be issued before a search of a home is conducted in order to protect against unreasonable searches and seizures. *Smock v. State*, 766 N.E.2d 401, 404 (Ind.Ct.App. 2002). However, there are exceptions to the warrant requirement, such as when exigent circumstances exist. *Id.* Under this exception, police may enter a residence without a warrant "when they reasonably believe that a person within is in need of immediate aid." *Cudworth v. State*, 818 N.E.2d 133, 137 (Ind.Ct.App. 2004), *trans. denied* (2005) (quoting *Min-*

*cey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)).

Here, the State argues that the smell of ether outside the apartment complex constituted exigent circumstances sufficient to allow for the Troopers' warrantless entry of Crabb's apartment. Specifically, the State maintains that the odor caused the Troopers to have concern about the people inside Crabb's apartment, especially their concern for the small child reported to be inside. Indeed, we do not dispute that the "combined knowledge of the fact that the manufacture of methamphetamine can be very dangerous and the fact that there were … people in the residence would cause any reasonable police officer to see the immediate need to remove any … persons from the residence." *VanWinkle v. State*, 764 N.E.2d 258, 266 (Ind.Ct.App. 2002). However, we believe it is a close question whether that the smell of ether alone constitutes a sufficient emergency to allow officers to enter a residence without a search warrant.

In *VanWinkle*, officers received three tips regarding the possible manufacture of methamphetamine at VanWinkle's residence. When officers checked out those tips, they personally noted the strong smell of ether and several windows open in mid-winter. Outside the home, the officers observed a tank, consistent with those holding anhydrous ammonia, which is used in the production of methamphetamine. While officers knocked on the front door of the residence, VanWinkle ran out the back door. Officers waiting at the back door stopped the bare-footed VanWinkle from escaping. He told police that his wife and a friend were both asleep inside the house. After arresting VanWinkle, officers then entered the home to conduct a protective sweep and to preserve evidence, removing the persons inside the home during the process. We upheld the justification of the

officers' warrantless actions as valid exceptions to the warrant requirement. *Id.* at 267.

Here, the Troopers were presented with the indicia of drug manufacture, as well as a report of a small child being present in the apartment. The initial complaint regarding the odors emanating from the apartment came from a neighbor. Once the Troopers arrived on the scene, they too were able to detect the smell of ether. Neighbors appeared during the investigation and confirmed that they had observed the odors at other times as well. When the Troopers first knocked on the door, they noticed a rustling of the curtains in the front window, indicating that people were in the apartment. These circumstances, combined with credible evidence that a small child was on the premises and, thus, being exposed to both risks from explosions due to the flammability of the chemicals used in producing methamphetamine and from the effects that ether can have on the respiratory system, such as numbing the senses and even a loss of consciousness, caused the Troopers to reasonably believe that a person inside the apartment was in immediate need of aid.

We readily acknowledge that methamphetamine production and use have rapidly become plagues in our communities and recognize that law enforcement is inundated with new challenges related to methamphetamine; however, we are not ready to draw a bright line which would allow officers to enter a home without a warrant based solely on the smell of ether. That said, we find that the specific facts of this case justified the warrantless entry and search of Crabb's apartment under the exigent circumstance exception to the warrant requirement.

Reversed.

BARNES, J., concurs.

BAKER, J., concurs in result with separate opinion.

BAKER, Judge, concurring in result with separate opinion.

I agree with the majority's view that the trial court's grant of Crabb's motion to suppress must be reversed. However, I write separately to advance the notion that the smell of ether emanating from the apartment—regardless of the presence of the child—was enough to justify the officers' warrantless entry and subsequent search of the premises.

As I observed in my dissent in *Holder v. State:*

> [T]he touchstone of our analysis under the Fourth Amendment is whether an individual has a 'constitutionally protected reasonable expectation of privacy.' *Shultz v. State*, 742 N.E.2d 961, 964 (Ind.Ct.App.2001). At least one commentator has observed that 'when the police come onto private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment.' 1 Wayne R. LaFave, Search and Seizure § 2.3(f), at 506–08 (3d ed.1996). Moreover, what a person knowingly exposes to the public, even in his own home or office, is not subject to Fourth Amendment protection. *Sayre v. State*, 471 N.E.2d 708, 712 (Ind.Ct.App.1984).
>
> A well-known exception to the warrant requirement permits a police officer to enter a home when it is believed that evidence may be destroyed or removed before a warrant is obtained. *State v. Straub*, 749 N.E.2d 593, 600 (Ind.Ct. App.2001). The officers must have a

reasonable belief that there are people within the premises who are destroying or about to destroy the evidence. *Esquerdo v. State,* 640 N.E.2d 1023, 1027 (Ind.1994). In such a case, the nature of the evidence must be evanescent, and the officers must fear its imminent destruction. *Id.* Yet another exception to the warrant requirement arises when the risk of bodily harm or death is present, or when it is necessary to come to the aid of an individual who is in need. *VanWinkle v. State,* 764 N.E.2d 258, 266 (Ind.Ct.App.2002), *trans. denied.* Put another way, '[t]he need to preserve or protect life justifies what would otherwise be illegal if exigency or emergency did not exist.' *Vanzo v. State,* 738 N.E.2d 1061, 1064 (Ind.Ct.App.2000).

824 N.E.2d 364, 370–71 (Ind.Ct.App.2005) (Baker, J. dissenting).[4]

As the majority so aptly notes here, the production and use of methamphetamine have plagued our communities, and our law enforcement agencies are inundated with constant challenges related to methamphetamine. *See op.* at 1071. That said, and given the circumstances of this case, I must agree with the State's contention that the smell of ether outside the apartment constituted exigent circumstances sufficient to permit the warrantless entry of Crabb's residence. The presence of a child in the apartment certainly is an important factor, but I decline to accept the notion that the officers could not have entered the residence "but for" the presence of the youngster. Hence, I vote to reverse the trial court's grant of the motion to suppress.

---

4. Our Supreme Court granted transfer in this case on April 28, 2005, although a written opinion has yet to be issued. *See Holder v. State,* 831 N.E.2d 745 (Ind.2005). In the previous appeal decided by this court, the majority declared that "[b]ecause the State failed to meet its burden to prove that [the officer's] actions were reasonable when he positioned himself to smell the odor [of ether] emanating from the basement window, it failed to demonstrate that the officer's actions comported with [Article 1, Section 11 of the Indiana Constitution]. Accordingly, the evidence obtained from the search should have been suppressed." *Holder,* 824 N.E.2d at 368.