Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 16 2014, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEREMIAH J. MOSLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 52A02-1402-CR-135 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MIAMI CIRCUIT COURT
The Honorable Timothy P. Spahr, Judge
Cause No. 52C01-1310-FB-57

**October 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Jeremiah Mosley appeals his convictions for dealing in methamphetamine, a Class B felony; possession of precursors with intent to manufacture a controlled substance, a Class D felony; and possession of methamphetamine, a Class D felony. Mosley raises three issues for review: (1) whether the warrantless search of Mosley's residence violated his rights under the Fourth Amendment to the United States Constitution or Article 1, Section 11 of the Indiana Constitution; (2) whether the trial court abused its discretion by admitting evidence of Mosley's failed attempts to purchase pseudoephedrine prior to his arrest; and (3) whether the admission of Mosley's statement to police indicating that he used to manufacture methamphetamine constituted fundamental error. Concluding the search of Mosley's residence did not violate his right to be free from unreasonable searches and that any error in the admission of the remaining evidence challenged by Mosley is harmless, we affirm.

## Facts and Procedural History[1]

On September 27, 2013, Miami County dispatch received a tip from an anonymous caller who claimed to have just picked up her child from Mosley's residence and that Mosley was presently manufacturing methamphetamine at that residence. Dispatch personnel passed the information along to Peru Police Department Officer Steve Hoover, who in turn called Officers Lee Mitchell, Josh Ulery, and Jeremy Brindle.

---

[1] We heard oral argument in this case on September 30, 2014 at Michigan City High School. We commend counsel for their advocacy. We would also like to thank the Michigan City High School employees and students from various local high schools who attended and made the argument a success.

The four officers met close to Mosley's residence and parked just down the street from the house. As the officers approached the home on foot, several of them smelled a chemical odor that they associated with the manufacture of methamphetamine. Officers Ulery and Brindle commented that the odor was so strong that they smelled it from thirty or forty yards away from the residence, and Officer Brindle believed the odor grew stronger as he neared the house.

Officer Hoover approached the house and knocked, and Mosley came out of the house. At this time, standing in the driveway near the house, Officer Hoover also detected a chemical odor he associated with methamphetamine. Officer Hoover informed Mosley that the officers were there to do a welfare check on his children, to which Mosley responded that no children were present and no one else was at the house. The officers requested Mosley's consent to enter the residence, but Mosley refused. Then, the officers heard a crash come from inside the residence. Mosley told the officers that the sound was probably his wife, Heather. The officers approached Mosley's doorway and called repeatedly for Mosley's wife to come outside, but no one responded. As Officer Hoover stood at the doorway, he noticed the chemical odor he smelled earlier was now "extremely strong." Transcript at 182.

After receiving no response from Mosley's wife, the officers entered the home and began yelling for her. The officers did a walkthrough of the residence; Mosley's wife was not present, but the officers found another man, David Rutledge, inside the home. During this walkthrough, the officers observed in plain view a number of items associated with the manufacture of methamphetamine, including empty pseudoephedrine

3

containers, coffee filters, jars containing a white residue, and two reaction vessels used in the "one-pot" method of manufacturing methamphetamine. The officers then exited the residence, detained Mosley, and obtained a search warrant. On Mosley's person, the officers discovered a plastic bag containing white tablets, later determined to be pseudoephedrine. A search of Mosley's residence produced additional evidence, including camping fuel, ether starting fluid, lithium batteries, pseudoephedrine, soiled coffee filters, a number of used one-pot reaction vessels, and an active one-pot methamphetamine lab. The active lab tested positive for methamphetamine.

The State charged Mosley with Count 1, dealing in methamphetamine, a Class B felony; Count 2, possession of precursors with intent to manufacture a controlled substance, a Class D felony; Count 3, possession of methamphetamine, a Class D felony; and Count 4, unlawful possession of a syringe, a Class D felony. Count 4 was dismissed prior to trial. Mosley filed a motion to suppress evidence resulting from the warrantless entry of his home. After a suppression hearing, the trial court denied Mosley's motion to suppress, concluding the warrantless entry was justified by exigent circumstances. The case proceeded to jury trial, and the jury found Mosley guilty of all three counts. Mosley now brings this appeal. Additional facts will be provided as necessary.

Discussion and Decision

I. Warrantless Search

First, Mosley contends the officers' warrantless residential entry violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11

4

of the Indiana Constitution.  The State maintains that the search was justified by the existence of exigent circumstances.

## A.  Standard of Review

Mosley brings this appeal following his trial and conviction, rather than as an interlocutory appeal of the denial of his motion to suppress.  Therefore, we review this appeal as a challenge to the trial court's admission of evidence at trial.  Clark v. State, 994 N.E.2d 252, 259 (Ind. 2013).  A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion.  J.K. v. State, 8 N.E.3d 222, 228 (Ind. Ct. App. 2014).  A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law.  Id.  We consider evidence from both the trial and the suppression hearing, so long as evidence from the suppression hearing does not directly contradict trial evidence.  Montgomery v. State, 904 N.E.2d 374, 377 (Ind. Ct. App. 2009), trans. denied.  We will not reweigh the evidence, and we will consider conflicting evidence most favorable to the trial court's ruling.  Id.

The constitutionality of a search is a question of law, which we review de novo.  Kelly v. State, 997 N.E.2d 1045, 1050 (Ind. 2013).  Likewise, determinations of reasonable suspicion and probable cause are reviewed de novo.  Myers v. State, 839 N.E.2d 1146, 1150 (Ind. 2005).  When a defendant challenges a warrantless search, it is the State's burden to prove the search fell within an exception to the Fourth Amendment's warrant requirement.  J.K, 8 N.E.3d at 228.

B. Fourth Amendment to the United States Constitution

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

A basic tenet of our Fourth Amendment jurisprudence is that "searches and seizures inside a home without a warrant are presumptively unreasonable." Kentucky v. King, 131 S.Ct. 1849, 1856 (2011) (citation omitted). However, the Supreme Court has made clear that this presumption of unreasonableness may be overcome because the "ultimate touchstone of the Fourth Amendment is reasonableness. Accordingly, the warrant requirement is subject to certain reasonable exceptions." Id. (citations and quotation marks omitted). Among these recognized exceptions is the existence of exigent circumstances. Id.

In this case, the State argues the officers' warrantless entry is justified by two exigencies: (1) the need to assist persons subject to a threat of injury and (2) the need to prevent the imminent destruction of evidence; both rationales fall within the exigent circumstances exception. See id. Our decision will focus on the rationale regarding a threat to safety, because the facts of this case and our case law amply support the application of that exception.

In State v. Crabb, this court held that a warrantless entry into the defendant's residence was justified by exigent circumstances. 835 N.E.2d 1068, 1069 (Ind. Ct. App. 2005), trans. denied. There, the police received a tip regarding a chemical odor coming

from the defendant's residence and information that a small child was inside the house. Id. When they arrived, the police could smell ether, an odor which they associated with the manufacturing of methamphetamine, coming from the house. Id. The court reasoned that the police officers could reasonably believe that a person inside the residence was in immediate need of aid, due to the dangers presented by the manufacturing of methamphetamine. Id. at 1071. Those dangers included the risk of explosion due to flammable chemicals and the risk of effects of chemicals on the respiratory system, such as numbing of the senses or loss of consciousness. Id. The court also noted that a finding of exigency was supported by the fact that police were aware of other indicia that methamphetamine was being manufactured, aside from the smell of ether. Id.[2]

The circumstances of this case are similar to those in Crabb, and the same outcome is warranted here. Law enforcement received an anonymous tip that Mosley was in the process of manufacturing methamphetamine at his residence. When the officers arrived at the scene, several of them claimed to smell a chemical odor the officers knew to be associated with the manufacturing of methamphetamine. In addition, the officers heard a crash come from inside and were told that Mosley's wife was inside— after Mosley previously told them that no children nor any other person was present. These circumstances support a reasonable belief that (1) methamphetamine was being manufactured in the residence and (2) there was a threat of injury to anyone inside due to the possibility of an explosion or the presence of dangerous chemical fumes. Therefore,

---

[2] The court in Crabb relied heavily on VanWinkle v. State, 764 N.E.2d 258 (Ind. Ct. App. 2002), trans. denied. VanWinkle was the first in a line of decisions holding that probable cause to suspect manufacturing of methamphetamine in a populated area constitutes an exigent circumstance. Id. at 266-67.

the officers' warrantless entry was justified by exigent circumstances, and the Fourth Amendment was not violated.

Mosley attempts to distinguish this case from Crabb and VanWinkle on the grounds that the suspicion in those cases was founded on reliable tips, while "the entry of Mosley's house stemmed from an uncorroborated anonymous tip." Brief of the Appellant at 8. Mosley overlooks the fact that the anonymous tip in this case was corroborated when the officers arrived at Mosley's residence and encountered a chemical odor they associated with the manufacturing of methamphetamine.

Second, Mosley asserts the officers' claims of a danger to occupants of the residence are "not credible" and that the officers did not "truly believe[] an explosion was imminent and that the fumes were overpowering . . . ." Id. As to Mosley's credibility assertion, the trial court clearly credited and relied upon the officers' testimony in its order denying Mosley's motion to suppress, and a reviewing court will not second-guess the trial court's credibility determinations in the way Mosley's argument suggests. See Montgomery, 904 N.E.2d at 377. Furthermore, the officers' subjective beliefs and motivations are not relevant to our Fourth Amendment analysis. It is well-settled that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify [the] action. The officer's subjective motivation is irrelevant." Brigham City, Utah v. Stuart, 547 U.S. 398, 404 (2006) (citations and quotation marks omitted) (emphasis in original). The facts of this case, viewed objectively, support the proposition that the officers could

reasonably believe that the dangers of manufacturing methamphetamine presented a threat of injury to any individual inside Mosley's residence.[3]

II. Mosley's Failed Purchase of Pseudoephedrine and Statement to Police

Next, Mosley contends the trial court abused its discretion by admitting evidence of Mosley's failed attempts to purchase pseudoephedrine prior to his arrest. Specifically, the evidence Mosley challenges indicated that Mosley attempted to purchase pseudoephedrine on two occasions approximately three weeks before his arrest, and those attempts were probably unsuccessful because Mosley's purchases of pseudoephedrine were in excess of legal limits.[4] Mosley claims that this evidence is irrelevant and that any probative value is substantially outweighed by the danger of unfair prejudice. Additionally, Mosley argues the statement that "he doesn't [manufacture methamphetamine] anymore" constitutes inadmissible character evidence and should not have been admitted at trial.[5] We find an in-depth analysis of these ancillary evidentiary

---

[3] Mosley also asserts that the warrantless entry into his residence violated the Indiana Constitution. However, Mosley's argument on this point is merely a repetition of his Fourth Amendment argument and provides no independent analysis on this point. Therefore, we consider Mosley's state constitutional argument forfeited. See Fair v. State, 627 N.E.2d 427, 430 n.1 (Ind. 1993) (stating failure to provide separate authority and argument that a search violated the Indiana Constitution forfeited that issue on appeal).

[4] Indiana law sets limits on the amount of pseudoephedrine that an individual may purchase in a given day, month, or year. See Ind. Code § 35-48-4-14.7(e).

[5] Specifically, Mosley takes issue with the following trial testimony submitted by the State through Officer Ulery:

> Mr. Mosley told me that he does mind us entering the residence. At that time I advised Mr. Mosley that also the anonymous tip advised that he's possibly cooking methamphetamine. Mr. Mosley then advised me that he thought we were there to check on children, and I advised him we are, but if there, if there's manufacturing methamphetamine going on inside of the residence, we don't want children present. Um, I asked him at that time, "Are we allowed to enter the residence?" He told us no, he doesn't do that anymore.

Tr. at 225 (emphasis added). Mosley did not object to admission of this evidence at trial. Ordinarily, a party's failure to object at trial forfeits the issue for appellate review. Halliburton v. State, 1 N.E.3d 670, 678 (Ind. 2013).

claims is unnecessary in this case because even assuming that any error occurred, it was harmless error that did not affect Mosley's substantial rights.

Errors in the admission of evidence are ordinarily disregarded as harmless error unless they affect the substantial rights of a party. Hoglund v. State, 962 N.E.2d 1230, 1238 (Ind. 2012). In determining whether a party's substantial rights have been affected, we consider the evidence's probable impact on the fact finder. Id. Improper admission of evidence is harmless error "if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." Id.

As a result of the search of his residence, there was a wealth of independent evidence supporting Mosley's convictions. Evidence procured from the search of Mosley's person and residence included camping fuel, ether starting fluid, coffee filters, lithium batteries, pseudoephedrine, soiled coffee filters, over twenty used one-pot reaction vessels, and an active one-pot methamphetamine lab. Put plainly, when the officers searched Mosley's home, they hit the mother lode. The independent evidence of Mosley's guilt is overwhelming. If any error occurred regarding admission of evidence of Mosley's failed attempts to purchase pseudoephedrine or his statement to police, it was most certainly harmless error.

---

The fundamental error doctrine is an exception to that general rule. Id. This exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Id. (citation omitted).

<u>Conclusion</u>

Concluding the search of Mosley's residence did not violate his rights under the Fourth Amendment and that any error in the admission of the other evidence challenged by Mosley is harmless, we affirm.

Affirmed.

RILEY, J., and BAILEY, J., concur.