Jesse PETERS, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 91A04–0712–CR–737.

Court of Appeals of Indiana.

June 10, 2008.

Transfer Denied Aug. 28, 2008.

---

Jay T. Hirschauer, Hirschauer & Hirschauer, Logansport, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Following a bench trial, Jesse Peters was convicted of Dealing in Methamphetamine,[1] as a class B felony. Peters presents three issues which we consolidate and restate as: Did the trial court abuse its discretion in admitting evidence seized as a result of a warrantless search of Peters's car?

We affirm.

On August 17, 2005, at approximately 3:00 a.m., Peters was involved in a one-vehicle car accident at the intersection of Illinois and Foster Streets in Monticello, Indiana. Peters apparently veered off of the road and his vehicle hit a signpost for a railroad crossing. Captain Curtis Blount was dispatched to the scene. Upon his arrival he observed a yellow Jeep with major front-end damage, including the bumper, grill, hood area, and windshield. The vehicle was off of the roadway and sitting in a private parking lot near the Olde Mill Apartments.[2] Peters was standing in front of the vehicle. Captain Blount observed that Peters was bleeding from the head and that he appeared dazed and confused. Upon approaching him, Captain Blount detected "a strong odor of ether" coming from Peters's person. *Transcript at 48.*

Captain Blount requested and received Peters's driver's license. Captain Blount also requested Peters's registration, and Peters informed him that it was in the vehicle. When Captain Blount went to retrieve the registration, he noticed a clip for a .40 caliber handgun in the driver's side door panel. He also detected an odor of ether inside the vehicle and observed items on the floorboard of the car that he knew to be related to the manufacture of methamphetamine, including butane, a container of salt, and a battery. Captain Blount returned to Peters and asked him if he had any weapons, to which Peters replied that he did not. Citing safety concerns, Captain Blount then patted down Peters and felt something hard in his left pocket. When asked, Peters claimed that he did not know what the item was. Captain Blount pulled the item out and discovered it was a pipe used for smoking meth-

---

1. Ind.Code Ann. § 35–48–4–1.1 (West, PREMISE through 2007 1st Regular Sess.) (formerly I.C. § 35–48–4–1).

2. Captain Blount spoke with another officer on the scene who informed him that a witness had indicated that the vehicle had been pushed away from the post.

amphetamine. Peters admitted that it was a "crank pipe". *Id.* at 53. Emergency personnel tended to Peters at the scene and then transported him to the hospital.

Captain Blount then began to investigate the source of the ether odor, expressing concern for his safety and the safety of others given his knowledge that ether is highly flammable. Captain Blount also suspected the presence of a roving methamphetamine lab and was concerned that chemicals used in such lab may have mixed as a result of the accident. While retrieving the registration, Captain Blount had observed a metal tin in the center console. He returned to the vehicle, opened the metal tin, and noticed a white-colored powder in a small plastic bag. Captain Blount then opened the back part of the Jeep and was confronted with "a really strong odor of ether". *Id.* at 17. Captain Blount observed a duffle bag in the back seat. He opened the bag and observed a small cooler wrapped in plastic. He opened the cooler and found a milky substance[3] that proved to be the source of the ether odor. Captain Blount contacted Detective Anthony Lantz of the Monticello Police Department who had formal training in dealing with methamphetamine labs. Eventually, the Indiana State Police clandestine laboratory team was called to the scene.

On the same day as the incident and after his release from the hospital, Peters gave a videotaped statement to police acknowledging the methamphetamine laboratory in his car, explaining the extent of his knowledge about the methamphetamine manufacturing process, and identifying his sources of the raw materials.

On February 24, 2006, the State charged Peters with dealing in methamphetamine as a class B felony. On August 29, 2006, Peters filed a motion to suppress the evidence seized from his vehicle. The trial court held a hearing on Peters's motion on November 17, 2006, and issued an order denying the motion to suppress on December 26, 2006. Following a bench trial held on August 20, 2007, the trial court found Peters guilty as charged.

■ Although Peters challenged the admission of the evidence seized from his vehicle through a pre-trial motion to suppress, he appeals following his conviction and thus, challenges the admission of such evidence at trial over his objection. Trial courts have broad discretion regarding the admission of evidence. *Kelley v. State,* 825 N.E.2d 420 (Ind.Ct.App.2005). We will reverse a trial court's ruling on the admission of evidence only for an abuse of discretion, that is, when the court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* We examine the evidence favorable to the trial court's ruling along with any uncontradicted evidence. *Matson v. State,* 844 N.E.2d 566 (Ind.Ct.App.2006), *trans. denied.* We neither reweigh evidence nor judge witness credibility. *Id.* In reviewing such a claim, we will consider foundational evidence submitted at the trial as well as evidence from the motion to suppress hearing which is not in direct conflict with the trial testimony. *Kelley v. State,* 825 N.E.2d 420.

■ Claiming violations of both the federal and state prohibitions against unreasonable search and seizure, Peters argues that the warrantless search of his vehicle (a) was not justified under the automobile exception to the warrant requirement be-

---

3. The substance was a methamphetamine mixture referred to as "pill dough," which is created in the middle of the methamphetamine manufacturing process. *Id.* at 87. Pill dough still needs to be "smoke[d]" or "gassed off" to create the final, consumable methamphetamine product. *Id.* at 85.

cause his wrecked vehicle was immobile; (b) could not be countenanced as an inventory search; and (c) was not justified by the officer's smell of ether. The federal Fourth Amendment and article 1, section 11 of the Indiana Constitution protect citizens from unreasonable searches and seizures. Although the language of article 1, section 11 is nearly identical to its federal counterpart, our analysis under section 11 is separate and distinct. *Holder v. State*, 847 N.E.2d 930 (Ind.2006). We will therefore engage in independent examinations of the propriety of the search and seizure under the Fourth Amendment and section 11.

■■■ The Fourth Amendment to the United States Constitution provides, in pertinent part: "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. Amend. IV. As a general rule, the Fourth Amendment prohibits warrantless searches. *Meister v. State*, 864 N.E.2d 1137 (Ind.Ct.App.2007), *trans. denied*. Consequently, when a search is conducted without a warrant, the State has the burden of proving that the search falls into one of the exceptions to the warrant requirement. *Id.* Exigent circumstances are one such exception that allow officers to dispense with the warrant requirement.[4] *Holder v. State*, 847 N.E.2d 930. In other words, where the "exigencies of the situation" make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment, the warrant requirement is inapplicable. *Id.* (citing *Mincey v. Ari-*

zona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). Exigent circumstances that may properly excuse the warrant requirement include threats to the lives and safety of officers and others and the imminent destruction of evidence. *Id.* "Law enforcement may be excused from the warrant requirement because of exigent circumstances based on concern for safety as long as the State can prove that a delay to wait for a warrant would gravely endanger the lives of police officers and others." *Holder v. State*, 847 N.E.2d at 937 (citing *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)).

In *State v. Crabb*, 835 N.E.2d 1068 (Ind. Ct.App.2005), *trans. denied*, this court upheld the warrantless entry into a home based on exigent circumstances. The circumstances in *Crabb* included complaints from neighbors of a chemical odor emanating from an apartment and concern about the presence of a small child. Upon arrival, officers immediately detected the odor of ether, which they knew was associated with the manufacture of methamphetamine. Although no one answered the door to the apartment from which the odor was emanating, when the officers knocked and rang the door bell, the officers noticed that window coverings in the front window moved indicating that someone was in fact inside the apartment. Officers also observed a cooler on the front porch that contained a jar and hoses, which was consistent with methamphetamine manufacture. Officers eventually gained entry into the apartment by opening a window and cutting the screen.

---

4. Captain Blount expressed concern for his safety and the safety of others given his knowledge that ether is highly flammable, the possibility of a methamphetamine lab being in the vehicle, and the further possibility that chemicals may have mixed as a result of the accident. Although the State did not argue to the trial court that the search was proper based on exigent circumstances, we may nevertheless affirm the trial court's decision to admit evidence seized as a result of the search based on any legal theory supported by the record. *Edwards v. State*, 724 N.E.2d 616 (Ind.Ct.App.2000), *trans. denied*.

In considering the propriety of the warrantless entry into the home, the court candidly noted that "it is a close question whether the smell of ether alone constitutes a sufficient emergency to allow officers to enter a residence without a search warrant." *State v. Crabb*, 835 N.E.2d at 1070. Ultimately, the court, acknowledging the dangers presented by the manufacture of methamphetamine, including the risk of explosion due to the flammability of chemicals used in the manufacturing process and the effects that ether can have on the respiratory system, refused to draw a bright line that the warrantless entry into a home could be justified solely on the smell of ether. Nevertheless, the court concluded that the circumstances, i.e., indicia of drug manufacturing, a report of the presence of a small child, and the odor of ether, caused the officers to reasonably believe that a person inside the apartment was in need of aid. The court thus held that the specific circumstances combined to form exigent circumstances sufficient to justify the warrantless entry into the defendant's house.

Our Supreme Court agreed with the *Crabb* court's analysis and applied it to the circumstances presented in *Holder*. In that case, an officer patrolling the city detected a strong odor of ether in the air. Additional officers arrived in the area and too detected an odor of ether in the air. The officers began walking the neighborhood looking for the source and eventually determined that the odor appeared to be coming from near the defendant's house. The officers checked around the defendant's property and, sniffing near a cracked basement window on the side of the house, detected a strong odor of ether emanating from it. The Court approved of the officers' actions up to this point, stating:

> The significant degree of the fumes from a known explosive and flammable chemical in a residential area compelled the officers to find its source for the sake of the safety and health of the nearby residents.

*Holder v. State*, 847 N.E.2d at 937.

The court then turned to the warrantless entry into the defendant's house. The court noted that when an officer made contact with the defendant, the officer noticed a rush of ether fumes escape as the defendant opened the door. In conversation, the defendant informed the officer that he had been charged with manufacturing methamphetamine in an adjacent county. When the officer asked the defendant to remain outside while a warrant was obtained, the defendant informed him that his infant granddaughter and two adults were inside the home. The officers immediately entered the home without a warrant. The Court noted that the officers were motivated by the risk of immediate danger to a young child in the volatile atmosphere of the home. The Court ultimately concluded that under the circumstances, the officers had an objectively reasonable belief in the immediate need to protect the public from death or serious injury to support their conclusion that exigent circumstances justified the immediate and warrantless entry into the defendant's home.

*Crabb* and *Holder* are distinguishable from this case in that both of those cases involved the warrantless entry and search of homes, not a vehicle. This distinction, however, makes the *Crabb* and *Holder* analyses even more compelling under the circumstances present in this case given that there is a lesser expectation of privacy in vehicles. *See Myers v. State*, 839 N.E.2d 1146 (Ind.2005) (noting that the automobile exception to the warrant requirement is based not only on the ready mobility of a vehicle but also on the lesser

expectation of privacy with respect to automobiles).

■ Contrary to Peters's claim, this is not a case where a warrantless search was based on the smell of ether alone. Here, Captain Blount arrived at the car accident scene and detected an odor of ether coming from the driver's person and inside the wrecked vehicle. Upon looking for the vehicle registration, Captain Blount observed a gun clip thus prompting him to pat-down Peters leading to the discovery of a crank pipe.[5] Peters acknowledged the nature of the item. Captain Blount also observed inside the vehicle several items related to the manufacture of methamphetamine. Noting the strong odor of ether and the indications of a possible methamphetamine lab, Captain Blount expressed concern for his safety and the safety of others given his knowledge of the flammability of ether and the dangers posed by methamphetamine labs. Indeed, our Supreme Court and this court have acknowledged the danger posed to human life presented by ether and the manufacture of methamphetamine. *See Holder v. State,* 847 N.E.2d 930. Captain Blount recognized the gravity of the situation when he testified that he was concerned that some of the chemicals may have mixed as a result of the accident. The circumstances in the instant case caused Captain Blount to reasonably believe that it was necessary to locate the source of the ether odor for the safety and protection of those at the scene and in the vicinity. The warrantless search of Peters's vehicle was justified under the Fourth Amendment by the exigencies of the situation.

■ Peters also argues that the warrantless search of his vehicle was in violation of article 1, section 11 of the Indiana Constitution, which provides "[t]he right of

the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated...." Automobiles are among the "effects" protected. *Taylor v. State,* 842 N.E.2d 327 (Ind.2006). To determine whether a search violated the Indiana Constitution, our courts must evaluate the reasonableness of the police conduct under the totality of the circumstances. *Myers v. State,* 839 N.E.2d 1146. This requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search. *Id.* Our Indiana Supreme Court has explained the reasonableness evaluation as follows:

> [A]lthough we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.

*Litchfield v. State,* 824 N.E.2d 356, 361 (Ind.2005). The burden is on the State to show that each relevant intrusion was reasonable in light of the totality of the circumstances. *State v. Bulington,* 802 N.E.2d 435 (Ind.2004).

■ For the same reasons set forth above, we conclude that the warrantless search of Peters's car did not violate article 1, section 11. Captain Blount detected a strong odor of ether on Peters's person and in his car, found a crank pipe on Peters, and observed other indicia of methamphetamine manufacturing in the wrecked vehicle, all of which alerted him to the possible presence of a roving metham-

---

**5.** Peters does not challenge the pat-down     search.

phetamine lab in the vehicle. Knowing the dangers posed by ether and potential hazards presented by methamphetamine manufacture, combined with the fact that the vehicle had just been involved in an accident, Captain Blount's concern for his safety and the safety of others was reasonable. These same circumstances also dictate the need for Captain Blount to search the vehicle in order to locate the source of the ether odor. Given that the vehicle had sustained serious front-end damage during the accident and that Peters had already been transported from the scene by an ambulance, there was no intrusion upon Peters's ordinary activities. In sum, the warrantless search of Peters's vehicle was reasonable under the circumstances. Finding no violation of the Fourth Amendment or article 1, section 11, we therefore conclude that the trial court did not abuse its discretion in admitting evidence seized as a result warrantless search.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.