Jason R. **MERCHANT**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 02A05–0910–CR–610.

Court of Appeals of Indiana.

May 5, 2010.

---

Randy M. Fisher, Deputy Public Defender, Fort Wayne, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Henry A. Flores, Jr., Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Jason Merchant appeals his conviction for unlawful possession of a firearm by a serious violent felon.[1] Merchant raises one issue, which we revise and restate as whether the trial court erred by admitting evidence obtained during a warrantless search of Merchant's vehicle. We affirm.

The relevant facts follow. During the afternoon hours of February 17, 2009, Fort Wayne Police Officers Keith Adair and Ronald Partridge responded to reports of a disturbance at 609 Frye Street in Fort Wayne, Indiana. Upon their arrival, the officers observed a black car leave the scene. As the black car left, the others at the scene were "pointing at the black [car] stating that it's them." Trial Transcript at 7. Then, a silver vehicle attempted to leave "in a speedy manner" and passed "[w]ithin feet" of Officer Adair, who was outside of his police vehicle. *Id.* at 7–8. Officer Adair observed that the driver, later identified as Merchant, was not wearing his seat belt and yelled at Merchant to stop the vehicle.

The officers approached Merchant's vehicle on the driver's side, and Officer Adair asked Merchant "why he was driving crazy." *Id.* at 8. Merchant told Officer Adair that "he was going to go chase down the [black car] and get a license plate number." *Id.* at 9. Merchant kept "putting his right hand back, off to his right side, around the center console, in an area where [Officer Adair] could not see what that hand was reaching for." *Id.* at 10. Officer Adair repeatedly told Merchant "to put his hand up where [he] could see it," but Merchant "kept going back to that area." *Id.* These movements concerned Officer Adair because he could not tell whether Merchant was "reaching for a weapon," and was continuing to "conceal[ ] that hand in an area where [Officer Adair] [could not] see it." *Id.* While speaking to Merchant, Officer Adair also heard police radio traffic "from our southwest division" despite the fact that his "radio was tuned to the northwest division." *Id.* at 11.

Officer Adair then asked Merchant to pull over to the curb of the street because they "were talking to him, he was extremely nervous, [they] were trying to ascertain what was going on, and [they] were blocking traffic." *Id.* at 9–10. As Merchant was moving the vehicle to the curb, Officer Adair observed Merchant remove "something" from the console area and "throw it underneath the passenger seat." *Id.* at 11. Officer Adair moved to the passenger side of the vehicle, opened the door, and recovered the item Merchant put under the passenger seat which Officer Adair determined to be a police scanner. As Officer Adair removed the police scanner from the vehicle, Merchant stated that "I just want-

ed to know where the police were at."[2] *Id.* at 21.

After Officer Adair removed the police scanner, Merchant "was still reaching back into that area, on his right side, by the center console." *Id.* at 13. Officer Adair asked Merchant if he had any weapons with him in the car, but Merchant would not answer. Officer Adair then directed Merchant to step out of the vehicle and asked Officer Partridge to pat Merchant down. Merchant and Officer Partridge stood about five feet from the passenger compartment of the silver vehicle.

Officer Adair moved back to the driver's side of the vehicle and, while "leaning on the car" through the open doorway of the vehicle, opened the center console and recovered a handgun. *Id.* at 34. After recovering the handgun, Officer Adair told Officer Partridge to handcuff Merchant.

The State charged Merchant with Count I, unlawful possession of a firearm by serious violent felon as a class B felony; and Count II, unlawful use of a police radio as a class B misdemeanor. On August 21, 2009, Merchant filed a motion to suppress evidence of the recovered handgun as "the result of an unreasonable search and seizure in violation of U.S. Const. amend. IV and Ind. Const. Art. I, Sec. 11." Appellant's Appendix at 35. A bench trial was held on August 27, 2009, and Merchant objected to the admission of the handgun into evidence based upon the recent United State Supreme Court case of *Arizona v. Gant,* — U.S. —, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).[3] The trial court over-

ruled Merchant's objection, finding that the "limited search" of Merchant's vehicle was justified, and admitted the handgun into evidence, and found Merchant guilty as charged. Trial Transcript at 60. On September 21, 2009, the trial court sentenced Merchant to eight years in the Department of Correction with two years suspended to probation on Count I and 180 days executed on Count II to be served concurrently to Count I.

The sole issue is whether the trial court erred by admitting evidence of a handgun obtained during a warrantless search of Merchant's vehicle.[4] We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State,* 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied.* We reverse only where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Joyner v. State,* 678 N.E.2d 386, 390 (Ind.1997), *reh'g denied.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State,* 717 N.E.2d 957, 966 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* Also, we may affirm a trial court's decision to admit evidence seized as a result of the search based on any legal theory supported by the record. *Edwards v. State,* 724 N.E.2d 616 (Ind.Ct.App.2000). *trans. denied.*

Merchant argues that the search was illegal under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution.

---

2. Officer Partridge testified that Merchant stated: "I just want to know where you guys are at." Trial Transcript at 47.

3. The subsequent short citations to *Gant* correspond to the Supreme Court Reporter.

4. Although Merchant originally challenged the admission of the handgun through a mo-

tion to suppress, he now challenges its admission at trial. "Thus, the issue is ... appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Lundquist v. State,* 834 N.E.2d 1061, 1067 (Ind.Ct.App.2005) (quoting *Washington v. State,* 784 N.E.2d 584, 587 (Ind.Ct.App. 2003)).

We begin by addressing Merchant's Fourth Amendment claims. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

If the search is conducted without a warrant, the burden is upon the State to prove that an exception to the warrant requirement existed at the time of the search. *Black v. State,* 810 N.E.2d 713, 715 (Ind.2004).

The State makes various arguments to justify the search under the Fourth Amendment. The State argues that "*Gant's* holding speaks to searches incident to arrest," but that here "both officers testified, and the trial court found, that [Merchant] was unsecured and unrestrained." Appellee's Brief at 12. The State argues that Merchant was therefore not under arrest at the time of the search, and thus "*Gant* is inapplicable." *Id.* The State argues that instead "the warrantless search was proper under the automobile exception, and the evidence was properly admitted on that ground." *Id.* at 10. The State also argues that "the search was also proper pursuant to concerns for officer safety," and that "[e]ven if the Court concludes that [Merchant] was placed under arrest at the time of the search, and that *Gant* is applicable, the circumstances in this case fit squarely within *Gant's* holding." *Id.* at 11–12. Finally, the State argues that "[a]ssuming *arguendo* that the search at issue could not pass muster" under *Gant,* "the good faith exception should apply to this search." *Id.* at 12–13.

We begin our analysis with the exception applied by the trial court: that the search producing the handgun was a lawful search incident to Merchant's arrest. In ruling to admit the handgun into evidence, the trial court stated:

> I'm not going to engage in the decision and perhaps an Appellate Court will, but I'm not going to engage in the analysis of whether or not Mr. Merchant could get past [Officer] Partridge and/or [Officer] Adair into the console. He was within five feet of the passenger compartment. I'm going to find specifically that he was not restrained, he was in direct presence of Officer Partridge but otherwise he was not restrained, he was not in handcuffs and that it is not unreasonable to believe that certainly there could have been a real struggle had Merchant, to get to the weapon and possibly get to the weapon past these officers, and I guess I don't think it's reasonable to place theses two officers in that kind of peril, given the circumstances of what they do. It is clear that ... it was possible, perhaps not terribly probable but it was possible that [Merchant] could get to that weapon.

Trial Transcript at 61–62.

In so ruling, the trial court determined that the officers' conduct complied with *Gant,* in which the Court revisited the case establishing the legality of searches incident to arrest, *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Belton* applied the holding of *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), *reh'g denied,* which first articulated that police may conduct warrantless searches incident to arrest, in the automobile context. *Belton* "held that when an officer lawfully arrests 'the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the

automobile' and any containers therein." *Gant*, —— U.S. at ——, 129 S.Ct. at 1717 (quoting *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864 (footnote omitted)).

As articulated in *Gant*, the purposes behind the exception set forth in *Chimel* and subsequently applied in *Belton* were for "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Id.* at ——, 129 S.Ct. at 1716 (citing *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040). The Court stressed that a warrantless search was justified because "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within the area into which an arrestee might reach." *Id.* at 1717 (quoting *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864) (internal quotations omitted). However, over the years *Belton* had been "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search."[5] *Id.* at 1718. The *Gant* Court decried this broad reading of *Belton* as serving "no purpose except to provide a police entitlement," and stated that "it is anathema to the Fourth Amendment to permit a warrantless search on that basis." *Id.* at 1721.

Thus, the Court in *Gant* ordered an end to the police practice of conducting warrantless searches incident to every arrest and reiterated the purposes underlying *Chimel* in defining the scope of the *Belton* exception. The Court held that "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's ar-

rest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 1719. The Court also stated:

> Although it does not follow from *Chimel*, we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others, including *Belton* and *Thornton* [*v. United States*, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004)], the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

*Id.* (quoting *Thornton*, 541 U.S. at 632, 124 S.Ct. at 2137 (Scalia, J., concurring in judgment)) (internal citations omitted). The Court later restated this rule as "permit[ting] an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 1721.

The Court also addressed arguments made by the State of Arizona that a broad interpretation of *Belton* was necessary in order to "protect law enforcement safety and evidentiary interests," the purposes set forth in *Chimel*. *Id.* The Court noted that although their decision in *Gant* worked to narrow the search incident to arrest exception as it had been widely applied, "[o]ther established exceptions to

---

5. The Court traced the possible origin of this broad reading of *Belton* to Justice Brennan's dissent in that case, "in which he characterized the Court's holding as resting on the 'fiction ... that the interior of a car is *always* within the immediate control of an arrestee who has recently been in the car.'" *Gant*, 129 S.Ct. at 1718 (quoting *Belton*, 453 U.S. at 466, 101 S.Ct. at 2867 (Brennan, J., dissenting)).

the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand." *Id.* The Court stated:

> For instance, *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons." *Id.,* at 1049, 103 S.Ct. 3469 (citing *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross,* 456 U.S. 798, 820–821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), authorizes a search of any area of the vehicle in which the evidence might be found. Unlike the searches permitted by Justice SCALIA's opinion concurring in the judgment in *Thornton,* which we conclude today are reasonable for purposes of the Fourth Amendment, *Ross* allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader. Finally, there may be still other circumstances in which safety or evidentiary interests would justify a search. *Cf. Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (holding that, incident to arrest, an officer may conduct a limited protective sweep of those areas of a house in which he reasonably suspects a dangerous person may be hiding).

*Id.* Thus, the Court reasoned that, depending on the circumstances, police officers are armed with a number of exceptions to the Fourth Amendment search warrant requirement which adequately serve the purposes set forth in *Chimel. See id.*

█ Turning to the search at issue here, our initial inquiry under the search incident to arrest exception is whether Merchant was lawfully arrested when the search of the console was conducted. Indiana Code Section 35–33–1–5 defines an arrest as the "taking of a person into custody, that he may be held to answer for a crime." "An arrest occurs when a police officer 'interrupts the freedom of the accused an[d] restricts his liberty of movement.'" *Moffitt v. State,* 817 N.E.2d 239, 246 (Ind.Ct.App.2004) (quoting *Sears v. State,* 668 N.E.2d 662, 667 (Ind.1996)), *trans. denied.* In addition, even when a police officer does not tell a defendant that he is under arrest before a search, that fact does not invalidate a search incident to an arrest as long as there is probable cause to make an arrest. *Id.; see also VanPelt v. State,* 760 N.E.2d 218, 223 (Ind. Ct.App.2001) ("The critical issue is not when the arrest occurs but whether there was probable cause to arrest at the time of the search. It is well settled that as long as probable cause exists to make the arrest, the fact that a suspect was not formally placed under arrest at the time of the search incident thereto will not invalidate the search."), *trans. denied.* "Probable cause adequate to support a warrantless arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect committed a criminal act." *Moffitt,* 817 N.E.2d at 246 (citing *Griffith v. State,* 788 N.E.2d 835, 840 (Ind.2003)); *see also* Ind.Code § 35–33–1–1(a).

█ Here, prior to Officer Adair's search of the center console area, the officers had probable cause to arrest Merchant for unlawful use of a police radio. Merchant does not challenge Officer Adair's initial search underneath the passenger seat upon hearing police traffic

from inside the vehicle, and upon discovering the police radio the officers had probable cause to support Merchant's arrest on that charge.[6] To that end, after discovering the police radio, Officer Adair told Merchant to exit the vehicle and asked Officer Partridge to pat Merchant down. At that time, it is clear that Merchant's liberty of movement had been restricted. Thus, despite Officer Adair's testimony that Merchant was not formally under arrest when he was asked to step out of the vehicle, we find that Merchant's freedom was interrupted and his liberty of movement restricted so as to effectively be under lawful arrest at that time.[7]

■ Having determined that Merchant was effectively under lawful arrest when Officer Adair searched the center console area and discovered the handgun, we next determine whether the search complied with the requirements of *Gant*. Because Merchant was arrested for unlawful use of a police radio and the radio had already been recovered from the vehicle, the second prong of *Gant* allowing searches if it is reasonable to believe the vehicle contains evidence of the offense of arrest does not apply here. Thus, we must determine whether Merchant was "unsecured and within reaching distance of the passenger

compartment at the time of the search." *Gant*, 129 S.Ct. at 1719.

■ The evidence presented at trial demonstrates that during the search Merchant was standing with Officer Partridge about five feet from the passenger compartment. Although Officer Partridge "had either patted [Merchant] down or was in the process," Merchant had not been placed in handcuffs at that time. Trial Transcript at 20. Thus, Merchant had yet not been secured.[8] Also, despite Officer Adair's presence in the doorway of the vehicle, Merchant was only five feet from "the passenger compartment." *Id.* at 15. We agree with the trial court that Merchant was unsecured and that, in the context of the facts of this case, Merchant was within reaching distance of the passenger compartment of the vehicle.

Based upon the facts in the record, we conclude that Officer Adair's search of Merchant's vehicle was a lawful search incident to arrest.[9] *See U.S. v. Goodwin–Bey*, 584 F.3d 1117, 1118, 1121 (8th Cir. 2009) (holding that warrantless search of the defendant's automobile including the locked glove box was a valid search incident to arrest under *Gant* where one of the automobile's occupants was under ar-

---

**6.** Ind.Code § 35–44–3–12 states in pertinent part that "[a] person who knowingly or intentionally: (1) possesses a police radio ... commits unlawful use of a police radio, a Class B misdemeanor."

**7.** We note that Officer Partridge, when asked whether Merchant would have been arrested simply for possessing the police scanner, testified: "Most likely, yes." Trial Transcript at 49.

**8.** Justice Scalia in his concurrence noted that the police have a "less intrusive and more effective means" of ensuring their safety by securing a defendant which is "virtually always employed: ordering the arrestee away from the vehicle, patting him down in the

open, handcuffing him, and placing him in the squad car." *Gant*, 129 S.Ct. at 1724 (Scalia, J., concurring).

**9.** Because we conclude that the search was a valid search incident to Merchant's arrest, we need not address the other arguments made by the State to justify the admission of the handgun. We note, however, the existence of additional circumstances, including that Merchant "was still reaching back into that area, on his right side, by the center console" after Officer Adair found the police scanner, Trial Transcript at 13, and that Merchant would not answer whether he had any weapons with him in the car, which may provide a basis for the application of other exceptions to the Fourth Amendment's warrant requirement.

rest and arresting officers conducted pat-down searches of defendant and the other occupants of the automobile but had not yet secured them), *cert. denied*, —— U.S. ——, 130 S.Ct. 1563, 176 L.Ed.2d 148 (2010).

Merchant also argues that the warrantless search violated his rights under Article 1, Section 11 of the Indiana Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

■ Although this language tracks the Fourth Amendment verbatim, we proceed somewhat differently when analyzing the language under the Indiana Constitution than when considering the same language under the Federal Constitution. *Redden v. State*, 850 N.E.2d 451, 460 (Ind. Ct.App.2006) (citing *Trimble v. State*, 842 N.E.2d 798, 803 (Ind.2006), *adhered to on reh'g by* 848 N.E.2d 278 (Ind.2006)), *trans. denied.* "Instead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances." *Trimble*, 842 N.E.2d at 803. We will consider the following factors in assessing reasonableness: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)). The burden rests on the State to show the intrusion was reasonable in light of the totality of the circumstances. *Hathaway v. State*, 906 N.E.2d 941, 945 (Ind.Ct. App.2009), *trans. denied.*

■ Here, when Officer Adair was initially speaking to Merchant after initiating a traffic stop, Merchant kept "putting his right hand back, off to his right side, around the center console, in an area where [Officer Adair] could not see what that hand was reaching for." Trial Transcript at 10. Officer Adair repeatedly told Merchant "to put his hand up where [he] could see it," but Merchant "kept going back to that area." *Id.* Merchant appeared to be "extremely nervous." *Id.* at 9. After Officer Adair observed Merchant remove "something" from the console area and "throw it underneath the passenger seat," Officer Adair searched that area and recovered a police scanner. *Id.* at 11. However, even after finding the scanner, Merchant "was still reaching back into that area, on his right side, by the center console." *Id.* at 13. Officer Adair asked Merchant if he had any weapons with him in the car, but Merchant would not answer. Officer Adair asked Merchant to exit the vehicle for a pat-down search and subsequently conducted a limited search in the area that Merchant had kept reaching into. Officer Adair recovered the handgun from searching that limited area. Under the totality of the circumstances, we conclude that the warrantless search of the console area was reasonable and did not violate Merchant's rights under Article 1, Section 11 of the Indiana Constitution. *See, e.g., Peters v. State*, 888 N.E.2d 274, 280–281 (Ind.Ct.App.2008) (holding that the warrantless search of defendant's vehicle was reasonable under the circumstances under Article 1, Section 11 of the Indiana Constitution), *trans. denied.*

For the foregoing reasons, we affirm Merchant's conviction for unlawful possession of a firearm by a serious violent felon.

Affirmed.

MATHIAS, J., and BARNES, J., concur.