Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Apr 12 2012, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PETER D. TODD**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON L. HASTE and JAMIE R. HASTE, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 20A05-1107-CR-364 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Olga H. Stickel, Judge
Cause No. 20D04-1001-FD-10
Cause No. 20D04-1001-FD-12

**April 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Jason L. Haste ("Jason") and Jamie R. Haste ("Jamie") (collectively, "the Hastes"),[1] appeal following their convictions for Maintaining a Common Nuisance, as a Class D felony,[2] Possession of Marijuana, as a Class D felony,[3] and Possession of Marijuana, as a Class A misdemeanor.[4] We affirm the Hastes' convictions and sentences for Maintaining a Common Nuisance and Possession of Marijuana as a Class D felony, but vacate their convictions for Possession of Marijuana, as a Class A misdemeanor, due to double jeopardy violations.

**Issue**

The Hastes raise a single issue for our review: whether the trial court abused its discretion by admitting evidence obtained by the police through a warrantless search of their trash and subsequent search of their home pursuant to a warrant.

**Facts and Procedural History**

On or about June 18, 2008, law enforcement received an anonymous tip that Jamie was growing and cultivating a large quantity of marijuana in the basement of a house located at 53367 County Road 9 in Elkhart, Indiana. The tipster described the house as tan in color, and mentioned that there was a large barn on the property. The Indiana State Police (ISP) performed a driver's license and criminal history check on Jamie, which revealed that

---

[1] This court granted the Hastes' motion to consolidate their appeals on December 5, 2011.
[2] Ind. Code § 35-48-4-13(b)(1).
[3] I.C. § 35-48-4-11(1).
[4] I.C. § 35-48-4-11(3).

Jamie's address was 53367 County Road 9 in Elkhart, Indiana, that his license was suspended, and that he had multiple arrests and convictions for drug-related offenses in Indiana and in other states.

The ISP then subpoenaed the utility records for Jamie's address. Those records revealed that, between May 2007 and September 2008, the average electricity used was 2407.58 kilowatts. Based upon his training, ISP Trooper Chad Larsh ("Trooper Larsh") knew that that an average home uses between 700 kilowatts and 1200 kilowatts per month. Trooper Larsh then conducted a drive by of Jamie's address, confirmed that there was a tan residence at the address provided by the tipster, and observed that, while the residence appeared to be occupied, the outbuildings did not appear to be used for residential or business purposes and thus would not require much electricity. Trooper Larsh also made an inquiry with the Elkhart County Assessor's Office to determine the precise dimensions of Jamie's residence and the outbuildings on the property.

As a result of his investigation, in the early morning of October 13, 2008, Trooper Larsh and another officer went to Jamie's address and collected abandoned trash from a single large trash can that had been set out for routine trash collection. The officers discovered numerous fresh, non-wilted complete and partial marijuana leaves and stems. Some of these marijuana plants were not smashed and the leaf pattern could still be identified, indicating that they had come from live marijuana plants. Trooper Larsh conducted a field test and determined that the plants in the trash can contained "THC," a chemical found in marijuana. App. 65. The officers also found in the trash a package of Zig-

3

Zag rolling papers, a previously harvested and completely dried marijuana stalk with roots, and mail addressed to "Jason L. Haste" showing an address of 53367 County Road 9 in Elkhart, Indiana. App. 65.

The ISP then ran a driver's license and criminal background check on Jason. The driver's license check revealed that Jason's address was 53367 County Road 9 in Elkhart, Indiana. His criminal history included prior arrests and one conviction for a drug-related offense.

Based upon all of this information, Trooper Larsh concluded that marijuana cultivation, drying, or usage was occurring at 53367 County Road 9, and on October 15, 2008, he applied for a warrant to search the address. The search warrant was granted and executed the same day. As a result of the search, police recovered a large amount of marijuana, paraphernalia used for smoking marijuana, and equipment used for growing marijuana.

On January 13, 2010, the State charged Jamie, Jason, and their mother, Kandi Garcia ("Garcia"), each with Maintaining a Common Nuisance, as a Class D felony, Possession of Marijuana, as a Class D felony, and Possession of Marijuana, as a Class A misdemeanor, under separate cause numbers. Jason's and Jamie's cases were consolidated on February 28, 2011. Garcia was tried separately and found guilty as charged after a jury trial that commenced on March 8, 2011 and concluded on March 11, 2011.

The Hastes' bench trial took place on March 15, 2011. At the outset of the trial, the parties stipulated to the introduction of the evidence and testimony presented at Garcia's trial,

4

with all objections preserved. The Hastes also moved to suppress all evidence obtained as a consequence of the trash search.[5] The trial court denied the Hastes' motion to suppress the evidence and found both guilty as charged.

On May 9, 2011, Jamie was sentenced to thirty months imprisonment with six suspended, to be served in Elkhart Community Corrections, for Count I of Maintaining a Common Nuisance. The trial court continued sentencing Jamie on May 23, 2011, and, for Count II Possession of Marijuana, as a Class D felony, it sentenced Jamie to three years imprisonment, to be served in Elkhart Community Corrections concurrently with the sentence for Count I. The trial court entered judgment of conviction for Count III, Possession of Marijuana, as a Class A misdemeanor, but imposed no sentence because it "merge[d]" with Count II.

On July 6, 2011, the trial court sentenced Jason to thirty months imprisonment with six suspended, to be served in Elkhart Community Corrections, for Count I, Maintaining a Common Nuisance, and an additional thirty months with six suspended for Count II, Possession of Marijuana, as a Class D felony, to be served concurrently. The trial court again merged Count III, Possession of Marijuana, as a Class A misdemeanor, into Count II and imposed no additional sentence.

The Hastes now appeal.

---

[5] Jason had also previously filed a motion to suppress on June 14, 2010, which was denied on September 17, 2010.

**Discussion and Decision**

<u>Double Jeopardy</u>

We initially observe that the trial court entered judgments of conviction on all three of the charged counts against each of the Hastes, but noted in the sentencing orders that it would not impose an additional sentence on Count III, Possession of Marijuana, as a Class A Misdemeanor, because it "merges" with Count II, Possession of Marijuana, as a Class D felony. (App. 18, 125) "A trial court's act of merging, without also vacating the conviction, is not sufficient to cure a double jeopardy violation." <u>Gregory v. State</u>, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008), <u>trans. denied</u>. A double jeopardy violation occurs when judgments of conviction are entered, and the violation cannot be remedied by the "practical effect" of concurrent sentences or by merger after conviction has been entered. <u>Id.</u> (quoting <u>Morrison v. State</u>, 824 N.E.2d 734, 741-42 (Ind. Ct. App. 2005), <u>trans. denied</u>). We therefore remand this cause to the trial court with an order to vacate Jason's and Jamie's convictions for Possession of Marijuana, as a Class A Misdemeanor.

<u>Admissibility of Evidence</u>

*Standard of Review*

Although Jason challenged the admission of evidence through a pre-trial motion to suppress, and both the Hastes moved to suppress the evidence at trial, they both appeal following their convictions, and thus challenge the admission of such evidence at trial over their objection. <u>See</u> <u>Peters v. State</u>, 888 N.E.2d 274, 277 (Ind. Ct. App. 2008), <u>trans. denied</u>. Trial courts have broad discretion regarding the admission of evidence. <u>Id.</u> We will reverse

6

a trial court's ruling on the admission of evidence only for an abuse of discretion, that is, when the court's decision is clearly against the logic and effect of the facts and circumstances before it. Id. We examine the evidence favorable to the trial court's ruling, along with any uncontradicted evidence. Id. We neither reweigh evidence nor judge witness credibility. Id. In reviewing such a claim, we will consider foundational evidence submitted at trial as well as evidence from the motion to suppress hearing which is not in direct conflict with the trial testimony. Id.

*The Trash Search*

The Hastes argue that the warrantless police search of their trash violated their Indiana Constitutional rights. Article I, Section 11 of the Indiana Constitution states that:

> The right of the people to be secure in their person, house, papers, and effects, against unreasonable search and seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

The reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005). Our Indiana Supreme Court has held that "a search of trash recovered from the place where it is left for collection is permissible under the Indiana Constitution, but only if the investigating officials have an articulable basis justifying reasonable suspicion that the subjects of the search have engaged in violations of the law that might reasonably lead to evidence in the trash." Id. at

7

357. Thus, the Litchfield court announced a two-part test for determining whether a trash search was reasonable: 1) the search must be based upon an "articulable individualized suspicion [that illegal activity is or has been taking place], essentially the same as is required for a 'Terry stop' of an automobile" and 2) the trash must be retrieved in substantially the same manner as the trash collector would take it. Id. at 364; also Teague v. State, 891 N.E.2d 1121, 1127-28 (Ind. Ct. App. 2008).

Here, the Hastes concede that the officers retrieved the trash in substantially the same manner as a trash collector would take it and instead challenge whether the police had reasonable suspicion that they were engaged in criminal activity. The investigation began with an anonymous tip that Jamie was growing marijuana at a particular address. "'[A]n anonymous tip is not enough to support the reasonable suspicion necessary for a Terry Stop.'" State v. Litchfield, 849 N.E.2d 170, 174 (Ind. Ct. App. 2006) (hereinafter "Litchfield II") (quoting Wells v. State, 772 N.E.2d 487, 490 (Ind. Ct. App. 2002) (internal quotations omitted)), trans. denied. Instead, "'[a]nonymous tips must be accompanied by specific indicia of reliability or must be corroborated by a police officer's own observations to pass constitutional muster.'" Id. (quoting Wells, 772 N.E.2d at 490).

In Litchfield II, this court examined the constitutionality of a trash search that resulted from a subpoenaed list of buyers of products from a gardening supply store. We treated the initial information received from the buyers list as similar to an anonymous tip requiring corroboration of criminal activity from the officer's own observations. Id. at 174. In that case, the police had taken steps as to other addresses on the list to make the otherwise

8

anonymous tips more reliable indications of criminal activity, but had failed to do so as to the Litchfields. Id. We therefore held that the search of the Litchfields' trash was unconstitutional, and in so doing, noted that the police had not driven by the Litchfields' house to observe for signs of marijuana growing, did not investigate the Litchfields' utility usage, and did not investigate the Litchfields' criminal histories. Id.

Here, the police received an anonymous tip that Jamie was growing marijuana. Police then ran a driver's license search to confirm that his address was 53367 County Road 9, in Elkhart. They also ran a criminal history check of Jamie that revealed various drug-related offenses. The police drove by Jamie's house and confirmed that his house was tan, which corroborated the anonymous tipster, and subpoenaed his utility records. Based upon Trooper Larsh's observations of the residence as well as the Assessor's file on the property's various dimensions, Trooper Larsh concluded that the electricity used at Jamie's residence was far in excess of an average house's electricity usage. This is sufficient corroboration of the anonymous tip to support the constitutionality of the trash pull.

*Search Warrant*

Upon conducting the trash pull, the police discovered evidence that prompted an application for a search warrant of 53367 County Road 9 in Elkhart, Indiana. A search warrant was issued and executed, and yielded evidence that was introduced at trial. The Hastes argue that the trial court abused its discretion by admitting this evidence because the warrant was not supported by probable cause.

The Indiana Constitution requires probable cause for the issuance of a search warrant.

9

Ind. Const. Art. 1, § 11; also Mehring v. State, 884 N.E.2d 371, 376 (Ind. Ct. App. 2008), trans. denied. "Probable cause is a 'fluid concept incapable of precise definition…[and] is to be decided based on the facts of each case.'" Mehring, 884 N.E.2d at 376. In deciding whether to issue a search warrant, the issuing magistrate must make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. Id. at 376-77. "The reviewing court's duty is to determine whether the issuing magistrate had a 'substantial basis' for concluding that probable cause existed." Id. at 377. We afford the magistrate's determination significant deference as we focus on whether reasonable inferences drawn from the totality of the evidence support that determination. Id. In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases are to be resolved in favor of upholding the warrant, and we will not invalidate a warrant by interpreting probable cause affidavits in a hypertechnical, rather than commonsense, manner. Id.

In his affidavit, Trooper Larsh stated that he had found numerous fresh and non-wilted complete and partial marijuana leaves and marijuana stems in a search of the Hastes' trash. He also stated that he found a dried marijuana stalk with roots and rolling papers, as well as mail addressed to Jason, who was subsequently determined to have a criminal history that included a drug offense. Based upon these discoveries, as well as Jamie's criminal history and the anonymous tip corroborated by the house's appearance and electrical usage, Trooper Larsh stated that he believed that marijuana growing, drying, or usage was taking place at

10

53367 County Road 9 in Elkhart, Indiana. The search warrant application was made two days after the trash search. It was thus reasonable for the issuing magistrate to conclude that there was a "fair probability" that evidence of a crime would be found at the Hastes' address. The trial court therefore did not abuse its discretion by admitting evidence retrieved as a result of the police search of the Hastes' residence.

## Conclusion

Although the investigation in this case began with an anonymous tip, the police sufficiently corroborated the tip such that reasonable suspicion existed to support a warrantless search of the Hastes' garbage. That search yielded numerous items related to the cultivation and use of marijuana. Trooper Larsh included a description of these items and the steps he took to corroborate the anonymous tip in his affidavit seeking a search warrant. The issuing magistrate could have reasonably concluded that there was a fair probability that evidence of a crime would be found at the Hastes' address. The trial court therefore did not abuse its discretion by admitting evidence seized by police from the Hastes' trash or residence.

We therefore affirm the Hastes' convictions and sentences for Maintaining a Common Nuisance, as a Class D felony, and Possession of Marijuana, as a Class D felony. However, double jeopardy concerns require that we remand to the trial court with instructions to vacate each conviction for Possession of Marijuana, as a Class A misdemeanor.

Affirmed in part and remanded with instructions.

ROBB, C.J., and MATHIAS, J., concur.

11